## SIDNEY JONES *vs.* JOHN C. WOLCOTT.

In an action by a deputy sheriff against an attorney at law for loss sustained in conse
quence of false representations by the latter that he was authorized to execute a written
contract of indemnity in the name of the plaintiffs in various writs committed by him to
the deputy sheriff for service, and thereby inducing him to accept the same and to attach
and sell property of the defendants in the writs, the defendant has no ground of excep-
tion to instructions by the court that, "to justify the jury in returning a verdict for the
plaintiff, they must be satisfied upon all the evidence before them that the defendant had
no right, either from previous appointment or subsequent ratification, to sign the contract
as attorney for the parties in whose behalf it purported to be executed; that he falsely pre-
tended that he had such authority, knowing that he had not, or having no reason to sup-
pose that he had; and that the plaintiff, upon the faith of that representation, proceeded
to perform official acts and thereby to incur liabilities, and that, by so acting, and being
so misled, he had sustained loss and damage."

An attorney at law executed to a deputy sheriff the following agreement, in the name of
the plaintiffs in various writs: "Know all men by these presents that we agree to hold
harmless A. B., deputy sheriff, for selling stoves and iron on the executions in his hands
at this time, to wit, one in *Knight* v. *Cheshire Iron Works*, the other *Dooley* v. *Same*, and
from all costs, charges, damages and expenses whatsoever that may result or accrue to
him for attaching or selling Cheshire Iron Works property, or property claimed or which
belongs or belonged to Cheshire Iron Works." In an action by the deputy sheriff against
the attorney for falsely representing that he had authority so to execute it, *Held,*

1. That the defendant could not be permitted to prove that it was only intended to indem-
nify the plaintiff against the claims of a single person;

2. That the contract only applied to precepts then in the plaintiff's hands, and did not
extend to such as were afterwards committed to him for service;

3. That the defendant had no ground of exception to an instruction that, in estimating the damages, the jury might take into consideration a judgment recovered against the plaintiff for taking and selling the stoves and iron, deducting therefrom so much of the damages therein as resulted from attachments made by the plaintiff subsequently to the making of the contract; or, if that amount could not be ascertained, the rule of damages might be the amount of the judgments in favor of the parties whose names had been signed by the defendant to the contract, and which had been satisfied by the application thereon of the avails of the sale of the property so taken by the plaintiff;

4. That the jury might allow interest on sums which the plaintiff had been compelled to pay, in consequence of his acts under the contract.

TORT by the assignee in insolvency of John W. Howland, a deputy sheriff, against an attorney at law.

The first count charged that the defendant placed certain writs against the Cheshire Iron Works, a corporation, in the hands of Howland for service, requesting him to attach certain property as belonging to them; but Howland, being doubtful as to the title of the corporation, required indemnity, and the defendant, professing to have authority from the plaintiffs in the several writs, made a written contract to indemnify him, and signed it as attorney for them; whereas in fact he had no authority to do so, and Howland became liable in consequence of making the attachments, and has been compelled to pay heavy damages.

The second count was like the first except that it set forth that, after signing the contract of indemnity, the defendant falsely asserted that he had obtained from the creditors a confirmation and adoption of his act in so doing.

The contract was as follows: " Know all men by these presents that we agree to hold harmless John W. Howland, deputy sheriff, for selling stoves and iron on the executions in his hands at this time, to wit, one in *Knight* v. *C. I. Works*, the other *Dooley* v. *Same*, and from all cost, charges, damages and expenses whatsoever that may result or accrue to him for attaching or selling Cheshire Iron Works property, or property claimed. or which belongs or belonged to Cheshire Iron Works. Cheshire April 12th 1852.

   " Briggs Iron Co. & Justus Tower, by J. C. Wolcott.
   " D. J. Dodge,       by same.
   " Peter Dooley,       by same."

At the trial in the superior court, before *Ames,* J., the execution of this contract by the defendant was admitted. The plaintiff introduced in evidence the executions referred to in the agreement, in favor of Knight and Dooley, and a certified copy of a writ against the Cheshire Iron Works in favor of Justus Tower, the agent of the Briggs Iron Company, who owned the demand sued in his name, dated April 8th 1852; and of a writ against the same defendants in favor of D. J. Dodge, dated April 9th 1852, on which attachments were made, and judgment afterwards rendered. He also introduced in evidence, under objection, the record of a judgment in this court in favor of Josiah Q. Robinson against Edward F. Ensign, sheriff of Berkshire, for the misfeasance of Howland, as one of his deputies, in the removal and conversion of certain iron belonging to Robinson, and the answer in the case drawn up and filed by the defendant as his attorney, justifying Howland's acts by virtue of writs and executions in his hands against the Cheshire Iron Works, including those above named; also the record of a judgment in favor of Ensign against Howland on his official bond; also the record of a judgment in favor of the Briggs Iron Company in a suit brought against them on the contract of indemnity mentioned above by Howland, in which the answer of the defendants therein denied Wolcott's authority to sign the contract as their attorney. It appeared that the present defendant had knowledge of that suit, and of the nature of the defence, and was present at the trial, and testified in behalf of the plaintiff therein.

Howland was called as a witness, and testified that the executions in favor of Knight and Dooley, and the writs in favor of Tower and Dodge were delivered to him for service by the defendant; that at the defendant's request he attached thereon as the property of the Cheshire Iron Works certain stoves and a quantity of pig iron, and put the same in charge of a keeper, and before removing the same demanded of the defendant a bond of indemnity, and received from him the contract copied above, the defendant saying at the time, " Before any risk is incurred, I will see the parties and get their approbation ; " that in a few days thereafter the defendant said to him, " You can

go ahead; I have seen the parties and they acquiesce;" that he thereupon made return of the writs, and afterwards sold the property on the executions, and paid over to the defendant the proceeds; that the suit against Ensign was for the property so taken by him, and that he defended the suit, employing Wolcott as attorney; that the judgment of Ensign against him was for the same default; and that he had paid the execution which issued thereon. The witness was also permitted to testify, under objection, to the amount of expenses paid by him in the suit of *Robinson* v. *Ensign*, the ground of objection assigned being that no bill of particulars of those expenses had been furnished, and it did not appear that any had been called for.

The plaintiff also offered to prove that after the delivery of the contract other writs in favor of other persons against the Cheshire Iron Works were placed in Howland's hands for service, and that the agreement was intended to protect him for his acts under those also; but the evidence was excluded.

Certain other evidence introduced and offered, and other rulings made at the trial, are stated in the opinion.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. C. Wolcott, pro se.*

*H. L. Dawes & J. N. Dunham,* for the plaintiff.

MERRICK, J.   We do not find in the statements contained in the bill of exceptions that there was any irregularity in the proceedings, or any inaccuracy in the rulings and instructions of the presiding judge upon the trial.   The action was brought to recover remuneration for losses sustained and expenses incurred by the plaintiff in consequence of his having been misled by the false representations of the defendant that he was authorized to make and execute the written contract of indemnity, referred to in the declaration, in the name and as the agent of the several parties who purport to be bound by it.   It is not objected by the defendant that, upon proof of the facts alleged in the declaration, the action cannot be maintained, but he complains of the rulings of the court in reference both to the admission and the rejection of evidence offered, and also of the instructions

concerning the facts which it was incumbent upon the plaintiff to prove, in order to maintain it, and the damages which in that event he would be entitled to recover.

It was admitted that the written contract which was produced upon the trial was in fact signed by the defendant. Evidence was produced by both parties upon the question whether he had authority so to make and execute that instrument, or whether having done so his acts had subsequently been ratified or affirmed by the parties purporting to be his principals. The instructions of the court, that, to justify the jury in returning a verdict for the plaintiff, they must be satisfied upon all the evidence before them that the defendant had no right, either from previous appointment or subsequent ratification, to sign the contract as attorney for the parties in whose behalf it purported to be executed; that he falsely pretended that he had such authority, knowing that he had not, or having no reason to suppose that he had; and that the plaintiff's insolvent upon the faith of that representation proceeded to perform official acts and thereby to incur liabilities, and that by so acting and being so misled he had sustained loss and damage, appear to us fair and correct. *Jefts* v. *York*, 10 Cush. 395. Indeed the defendant, though complaining of the instructions, has wholly failed to point out any particular in which they were defective or objectionable.

2. The defendant offered upon cross-examination of the plaintiff, who was a witness upon the trial, to show that the written contract was intended to indemnify him against the claim of one Richmond to the attached property, and for no other purpose. But this was excluded, and very properly, because it was a proposal to vary, control and change the meaning and effect of the terms of the written contract.

3. As to the construction of the contract, the court ruled that by its terms it was an agreement on the part of the obligors to indemnify the plaintiff against the loss and damage which should result or accrue to him by reason of the levy on execution and attachment on writs which he had then made on the property of the Cheshire Iron Company, and did not protect him against the consequences of his acts under other processes which he

subsequently received.  Being thus carefully limited, it was cer-
tainly sufficiently favorable to the defendant, and cannot there-
fore afford him any ground of exception.

4. In regard to the question of damages, it was rightly held
that the plaintiff, if entitled to recover at all, was entitled to
recover such sum as would be a complete indemnity for all the
losses which resulted to him directly from his failure to enforce
the contract against the parties by whom it purported to have
been made.  This general proposition has not been contested by
the defendant, but he insists that evidence bearing upon this
question was admitted which should have been excluded.

Upon a careful analysis of the statements in the bill of excep-
tions, it appears that the plaintiff and J. Q. Robinson were both
deputies of E. F. Ensign, sheriff of the county of Berkshire ;
that Robinson, by virtue of a writ in favor of the Western Rail-
road Company, had attached certain iron and stoves, the prop-
erty of the Cheshire Iron Works, and that afterwards the plain-
tiff, by direction of the defendant, seized and took away from
the possession of Robinson the same iron and stoves, by levy on
the executions and attachment on the writs referred to in the
contract of indemnity.  Robinson, by force of his attachment,
having acquired a special property in the stoves and iron, and
being bound to account for the same to the owner, was entitled
to recover the full value thereof against Howland.  Instead of
bringing his action directly against Howland, for this purpose
he instituted a suit against the sheriff for the unlawful act of
his other deputy, and recovered judgment for the value of the
property taken from him.  *Robinson* v. *Ensign*, 6 Gray, 300.
Mr. Ensign then brought a suit against Howland and his sure-
ties, and obtained judgment for the amount of the judgment of
Robinson against himself.  The court ruled that this judgment
which was paid by the plaintiff, was one of the elements of
damage to be considered in ascertaining the amount for which
the defendant was liable to him ; but that if that judgment con-
sisted in any part of damage resulting from attachments made
by the plaintiff subsequent to the execution of said contract,
that part must not be allowed, but should be deducted from

its amount, if it could be ascertained. But that if it could not be ascertained, then the rule of damages might be the amount of all the judgments in favor of the nominal and supposed parties to said contract, to the payment of which the proceeds of the property taken by the plaintiff on said writs and executions had been applied. The effect of this rule was simply this, that the defendant was liable to the plaintiff not for the full value of the property which he had taken from Robinson, and which the latter might have recovered, but only for so much as was actually received by the plaintiff upon its sale and applied to the satisfaction of the judgments obtained in the suits to which the contract of indemnity applied. In this view it clearly appears that the ruling was unobjectionable ; for as the plaintiff was to be indemnified against the claim of Robinson, and his claim being for the full value of the stoves and iron, no injustice could be done in holding him responsible for the proceeds of its actual sale, which of course could not have exceeded that value. To ascertain this amount, therefore, it was essential to show the record of judgment, the executions and levies thereon in these cases; for this was the only competent proof upon which the plaintiff could rely to show the appropriation as well as the amount which was in fact obtained, upon conversion and sale of the property. For this reason it is obvious that the objection of the defendant to the admission of such evidence was unfounded.

5. To the elements or items of damage already considered, the court instructed the jury that there should be added, in making up their verdict for the plaintiff, the expense to which he was put in defending the sheriff against the suit of Robinson, the expense incurred by him in prosecuting his own suit against the supposed parties to said contract of indemnity, the costs recovered therein against him, and a reasonable compensation for his own time and services, exclusive of his fees as a witness upon the trial, in defending and conducting said suits, and also interest on the entire amount of all his losses and expenses from the time they were incurred up to the time of finding the verdict. The only part of this instruction to which any objection has

been made is that which relates to the rule prescribed respecting interest. But that his indemnity should be complete, it is necessary that the plaintiff should have interest upon all the money which he was compelled to advance. For all the advances which he was obliged to make, he was entitled to be immediately repaid; and, according to the general rule in all similar cases, he should be allowed, as he would have been in a suit for the money, to recover interest as damage for its detention. The objection to the instruction on this account cannot therefore be allowed to prevail.

If there were any other exceptions taken by the defendant at the trial besides those which have already been considered, they were not argued or adverted to at the argument upon the questions of law arising upon the bill of exceptions, and they must therefore be regarded as having been waived or abandoned.

*Exceptions overruled.*